## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ELIAS WATSON.** | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| | ) | **NO. 16-40133-TSH** |
| **v.** | ) | |
| | ) | |
| **DAVID MITA, as Police Officer of the City** | ) | |
| **Of Worcester and Individually; STEPHEN** | ) | |
| **PIGNATARO,  as Police Officer of the City** | ) | |
| **Of Worcester and Individually; THE CITY** | ) | |
| **OF WORCESTER; KIRSCH LIQUORS,** | ) | |
| **ROBERT KIRSCH; and JOHN BROYLES** | ) | |
| **Defendants.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER ON DEFENDANTS'
### MOTIONS FOR SUMMARY JUDGMENT
**August 20, 2019**

**HILLMAN, D.J.**

### Introduction

Plaintiff Elias Watson ("Plaintiff" or "Watson") filed a multi-count complaint alleging

various federal and state civil rights violations and common law tort claims against Defendants

David Mita and Stephen Pignataro, Police Officers for the City of Worcester, the City of

Worcester (collectively, "the City Defendants"), Kirsch Liquors, along with store owner Robert

Kirsch and store employee John Broyles (collectively, the "Kirsch Defendants").  Defendants

moved to dismiss all counts in the complaint pursuant to Fed. R. Civ. P. 12(b)(6). On September

29, 2018, this Court granted the City Defendants' Motion to Dismiss as to Counts I, II, III, IV, V,

VI, and VIII and denied it as to Count VII and granted the Kirsch Defendants' Motion to Dismiss

as to Counts V, VI, and VIII and denied it as to Count VII. Both the City Defendants and the

Kirsch Defendants now move for summary judgment as to the final remaining claim, Count VII for malicious prosecution against all defendants.

## **Relevant Facts**

On the evening of March 9, 2013, at approximately 8:00 p.m, Plaintiff visited Kirsch Liquors located at 646 Main Street in Worcester, Massachusetts. Sometime thereafter, Worcester police officers Stephen Pignataro and David Mita were dispatched to Kirsch Liquors for a disturbance or fight involving the Plaintiff and an employee of Kirsch Liquors. Prior to the arrival of the Officer Pignataro and Mita, Plaintiff was in the store, arguing with Defendant Broyles, a Kirsch employee. In the surveillance footage, Broyles can be heard asking Plaintiff to leave the store. Plaintiff yelled and swore at Broyles in the store, stating "I wish one of y'all will touch me and I will show you a knife." Plaintiff then said to Broyles to "F*** with me." Ms. Tracy Hanson, an employee of Kirsch Liquors, can be observed on the phone speaking with Worcester Police Department emergency dispatch. Plaintiff then approached the counter, and continued to argue with Broyles.

Plaintiff was pushed to the ground by Broyles. He got back on his feet, refused to leave the store, engaged in arguments with other patrons of the store, while continuing to yell at Broyles. Specifically, Plaintiff stated to Broyles, "you f***ed with the wrong person," "I am coming back," "I will be your worst nightmare," "I will beat your f***ing punk a**," and "I have a son and he will murder him." At about this time, responding to the dispatch call, Officer Pignataro entered the store and observed the Plaintiff's behavior. Officer Pignataro approached the Plaintiff and advised him to calm down. The Plaintiff stated that he had a knife, but was not holding a knife. Officer Pignataro attempted to restrain the Plaintiff, brought him to the ground and handcuffed him. Officer Mita arrived on the scene after the Plaintiff had been handcuffed.

Officer Mita searched the Plaintiff and found a pocket knife on his person. (Docket No. 50, Exhibit 8, p.2, *Excerpt Worcester District Court Transcript*). Plaintiff was transported to the Worcester Police Department and was booked. Officer Mita spoke with Broyles and Hanson about the incident at the store. On March 9, 2013, Officer Mita submitted an application for criminal charges against the Plaintiff for disturbing the peace and assault with a dangerous weapon. An assistant clerk magistrate of the Worcester District Court found probable cause to initiate charges against the Plaintiff and he was arraigned on March 11, 2013 and release on personal recognizance. At the Plaintiff's trial on September 19, 2014, the District Court allowed the defense motion for a required finding of not guilty on all counts. Plaintiff filed this action on September 16, 2016.

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505. An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). It can meet its burden either by "offering evidence to

disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (internal quotation marks omitted).

*Malicious Prosecution Standard Under Section 1983*

In Count VII of his complaint, Plaintiff asserts a claim of malicious prosecution against all Defendants. He alleges in general terms that each of the defendants caused the initiation of the criminal process against him, with malice and without probable cause. Plaintiff further claims that the because of this malicious prosecution, he was denied of his rights under the Massachusetts Declaration of Rights, the U.S. Constitution and 42 U.S.C. § 1983.

To succeed on a Section 1983 claim for malicious prosecution, a plaintiff must meet the common law elements listed above and additionally demonstrate "a deprivation of a federally-protected right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001); *see also Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996) (explaining that a "garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail"). A plaintiff seeking to sustain a malicious prosecution claim under § 1983 must do more than merely satisfy the elements of the common law tort of malicious prosecution. *See Britton v. Maloney*, 196 F.3d 24, 28 (1st Cir. 1999). The "plaintiff must show a deprivation of liberty, pursuant to legal process,

that is consistent with the concept of a Fourth Amendment seizure." *Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010). In the typical situation, the requisite legal process "comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." *Nieves,* 241 F.3d at 54; *Harrington*, 610 F.3d at 30.

Where, as here, a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised. *See Nieves,* 241 F.3d at 54; *see also Singer v. Fulton County Sherriff,* 63 F.3d 110, 117 (2d Cir. 1995) (holding that the plaintiff's arrest "cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not 'pursuant to legal process'"). The plaintiff "cannot base a malicious prosecution claim on [his] warrantless arrest, because it did not constitute legal process." *Meehan v. Town of Plymouth,* 167 F.3d 85, 90 (1st Cir. 1999). This leaves the plaintiff with the task of showing some post-arraignment deprivation of liberty that amounts to a Fourth Amendment seizure. *See Nieves,* 241 F.3d at 54.

In this regard, Plaintiff appears to argue that he suffered post-arraignment deprivations of liberty associated with the stressors attendant to his arrest. He complains of loss of his apartment, harm to his reputation, and the emotional and financial stress related to trial preparation. As further support for his malicious prosecution claim, Plaintiff argues that the Defendants continued to "perpetuate and advance their false statements" during the months leading up to his trial. The plaintiff's contention that these losses constituted a Fourth Amendment seizure, however, is foreclosed by precedent. The First Circuit has rejected the notion that the facts that a plaintiff was forced to attend court dates, loss of employment, reputation and undergoing the

stress of knowing that he faces criminal charges, constitute a seizure for Fourth Amendment purposes. These have been termed "run-of-the-mill conditions of pretrial release." *Nieves,* 241 F.3d at 55.

In this case, there is no indication that the plaintiff was detained after the initiation of the criminal charge, forced to post a pecuniary bond, subjected to travel restrictions, or otherwise burdened with any significant deprivation of liberty. Plaintiff has failed to present any evidence of a deprivation of liberty sufficient to sustain such a claim, nor has he set forth any evidence to support any other constitutional violation to support his federal malicious prosecution claim against any of the defendants.

*Malicious Prosecution Under Massachusetts Law*

The elements of a common-law cause of action for malicious prosecution in Massachusetts are, "'(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice.'" *Cabot v. Lewis*, 241 F.Supp.3d 239, 260 (D. Mass. 2017) (quoting *Nieves*, 241 F.3d at 53). The Plaintiff must establish that a named defendant commenced or continued the criminal proceedings against the Plaintiff, s*ee Nieves*, 241 F.3d at 51, and must show that the defendant acted with "improper purpose." *Wilber v. Curtis*, 872 F.3d 15, 24 (1st Cir. 2017) (*quoting Chervin v. Travelers Ins. Co*., 448 Mass. 95, 108-109, 858 N.E.2d 746, 756 (2006)).

As to the Kirsch Defendants, there is no evidence on the record to support that Kirsch, Broyles or Kirsch Liquors caused the criminal procedure to commence or continue. Plaintiff offered no evidence to support a claim that any of the Kirsch Defendants encouraged or demanded that the officers initiate a criminal proceeding against him. The mere transmission of

information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution. *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7, 10 (1991). Accordingly, summary judgment is granted as to the Kirch Defenants.

*City Defendants*

The City of Worcester is immune from this intentional tort claim pursuant to Mass. Gen. Laws c. 258, § 10(c) (preserving sovereign immunity for municipalities from "any claim arising out of an intentional tort, including ... intentional mental distress, malicious prosecution, ... libel, slander, ..."). *See Cass v. Town of Wayland*, 383 F. Supp. 3d 66, 83 (D. Mass. 2019), therefore summary judgment is granted as to Count VII as to the City of Worcester.

Officer Pignataro's contribution to the matter ended following his response to a 911 call for a disturbance involving the Plaintiff at Kirsch Liquors on March 9, 2013. Other his initial interaction with the Plaintiff and the handcuffing of the Plaintiff inside of Kirsch Liquors, Officer Pignataro had no further role. Officer Pignataro was not involved in the interviewing of witnesses, did not recover any evidence at the scene, was not the arresting officer and did not initiate the filing of an application for criminal charges in Worcester District Court against the Plaintiff. Accordingly, where Officer Pignataro played no role in the commencement, or continuation, of charges against the Plaintiff, summary judgment must enter for him.

Defendants argue that Officer Mita cannot be liable for malicious prosecution because he had probable cause to bring the charges. Plaintiff disputes this assertion, contending that "Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed

a crime." *Floyd v. Farrell*, 765 F.2d 1, 5 (1ˢᵗ Cir. 1985). Whether probable cause exists "is judged by an objective, rather than a subjective standard*." Chervin v. The Travelers Insurance Company*, 858 Mass. 95, 104 (2006).

Here, the Plaintiff was charged in Worcester District Court with disorderly conduct and assault with a dangerous weapon. Under Massachusetts law, person commits the offense of disorderly conduct if, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [he] … engages in fighting or threatening, or in violent or tumultuous behavior; or … creates a hazard or physically offensive condition by any act that serves no legitimate purpose of the actor." Mass. Gen. Laws c. 272, § 53. In order to prove an assault with a dangerous weapon, it must be shown that "a person engaged in conduct that a reasonable person would recognize to be threatening, that the defendant intended to place the victim in fear of an imminent battery, and that the victim perceived the threat."

Following an investigation which included interviews with Ms. Hanson, Mr. Broyles, and Officer Pignataro at the scene of the incident, the surveillance video of the events that night, as well as his own observations of the Plaintiff, Officer Mita concluded that it was appropriate and reasonable to bring charges against him. By all accounts, Plaintiff's behavior and statements in a public place indicated that he would become violent or threatening, and would support both charges. Plaintiff mentioned several times in the surveillance video, the content of which he relied for his criminal trial, that he was in fact carrying a knife and threatened to use it. The neutral magistrate at the Worcester District Court found there to be probable cause for the commencement of criminal charges. The existence of probable cause for the arrest and prosecution of the disturbing the peace and assault charges removes any factual basis for Plaintiff's claim for malicious prosecution against Officer Mita.

## Conclusion

For the foregoing reasons, the City Defendants' Motion for Summary Judgment (Docket No. 48) is **GRANTED** as to **Count VII**; and the Kirsch Defendants' Motion for Summary Judgment (Docket No. 43) is **GRANTED** as to **Count VII**.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**